[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 123 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 125 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 127 
The grant from Dederer to the Hudson and Delaware Railroad Company, bearing date the first day of July, 1836, was made to that company "and their successors." Under that grant, there can be no doubt the Hudson and Delaware Railroad Company took a fee. The words of perpetuity used would have been sufficient to describe a fee, even under the most strict requirements of the common law.
The company had ample power to purchase lands. It was a power incident at common law to all corporations, unless they were specially restrained by their charters or by statute. (2 Kent,
281; Co. Litt., 44 a, 300 b; 1 Kyd on Corp., 76, 78, 108, 115; 3 Pick., 239.) And in this case the power was expressly conferred by the 9th section of the charter. (Sess. Laws of
1835, p. 113); and by the 16th section there were given to it the general powers conferred upon corporations (1 R.S., 731), one of which is that of holding, purchasing and conveying such real estate as the purposes *Page 128 
of the corporation may require. But if no words of perpetuity had been used, the grantor owning a fee, the company would have taken a fee; for the statute is now imperative, that every grant shall pass all the estate or interest of the grantor, unless the intent to pass a less estate or interest shall appear by express terms or be necessarily implied in the terms of the grant. (1 R.S.,
748, § 1.)
But it is objected that because, by the act of incorporation, there was given to it only a term of existence of fifty years (Laws of 1835, p. 110, § 1), therefore the grant shall be deemed to have conveyed an estate for years, and not in fee. The unsoundness of that position is easily shown. It was never yet held, that a grant of a fee in express terms could be restricted by the fact that the grantee had but a limited term of existence. If it were so, a grant could never be made to an individual in fee, because, in his earthly existence, he is not immortal. Under such a rule, a man could never buy a greater interest in a farm than a life estate. It would follow that all estates would be life estates, except those held by perpetual corporations. The intent of parties, fully expressed in a deed, would avail nothing, but all grants would be measured by the mortality of the grantee. It is needless to follow out the proposition further to show its absurdity.
It is not to the parties to a grant, but to its terms, that we look to ascertain the character and extent of the estate conveyed. Such was the rule at common law, and is still by statute. (1 R.S., 748, § 1.) The change made by the statute favors the grantee, where there are no express terms in the grant, by presuming the grantor intended to convey all his estate.
At common law, it was only where there were no express terms, defining the estate in the conveyance, that the term of legal existence of the grantee was deemed to be the measure of the interest intended to be conveyed. Thus, words of perpetuity, such as "heirs or successors," were *Page 129 
necessary to convey a fee. A grant to an individual, without such words, conveyed only a life estate. For the same reason a grant, without such words, to a corporation aggregate (Viners Ab.,Estate, L. 3), or to a mayor or commonalty (ib., 3), conveyed a fee, because the grantees were perpetual. The grantee named in such case having a perpetual existence, the estate could not have been enlarged by words of succession.
But this is now changed by our Revised Statutes. Words of inheritance or succession are no longer necessary, and, in their absence, we look, not to the term of existence of the grantee to ascertain the estate, but to the amount of interest owned by the grantor at the time he conveyed. All his estate is deemed to have passed by the grant. (1 R.S., 748, § 1.)
All this is applicable only to cases where the grant is silent as to the extent of interest conveyed. Where that interest is expressly described, as in this case, the law never, either before or since our revision, did violence to the intent of the parties, by cutting down the estate agreed to be conveyed to the measure of the grantee's term of existence. It has long been one of the maxims of the law, that "no implication shall be allowed against an express estate limited by express words." (Viner'sAb., Implication, A. 5; 1 Salk., 236.)
It is erroneous to say that an estate in fee cannot be fully enjoyed by a natural person, or by a corporation of limited duration. It is an enjoyment of the fee to possess it, and to have the full control of it, including the power of alienation, by which its full value may at once be realized.
It is well settled that corporations, though limited in their duration, may purchase and hold a fee, and they may sell such real estate whenever they shall find it no longer necessary or convenient. (5 Denio, 389; 2 Preston on Estates, 50.) Kent says: "Corporations have a fee simple for the purpose of alienation, but they have only a determinable *Page 130 
fee, for the purpose of enjoyment. On the dissolution of the corporation, the reverter is to the original grantor or his heirs; but the grantor will be excluded by the alienation in fee, and in that way the corporation may defeat the possibility of a reverter. (2 Kent, 282; 5 Denio, 389; 1 Comst. R., 509.) Large sums of money are accordingly expended by railroad companies in erecting extensive station houses and depots, and by banking corporations in erecting banking houses, because, holding the land in fee, they may be able to reimburse themselves for the outlay by selling the fee before the termination of their corporate existence.
The Hudson and Delaware Railroad Company then, by their grant from Dederer, took a title in fee, but it was a fee upon condition, there being in the grant an express condition that the road should be constructed by the company within the time prescribed by the act of incorporation. This was not a condition precedent, as was argued by the plaintiff's counsel, but a condition subsequent. The fee vested at once, subject to being divested on a failure to perform the condition. This is apparent from the language employed in the grant and from the character of the transaction. There are no technical words by which to distinguish between conditions precedent and subsequent. Whether a condition be one or the other is matter of construction, and depends upon the intention of the party creating the estate. (4Kent, 124; 1 Term R., 645; 2 Bos. Pull., 295; 3 Peters'U.S.R., 346.) In the latter case, Marshall, Ch. J., said: "If the act (on which the estate depends) does not necessarily precede the vesting of the estate, but may accompany or follow it, if this is to be collected from the whole instrument, the condition is subsequent." In this case, it was evidently the design of the parties that the estate should vest at once, so that the grantee might proceed immediately with the construction of the road; otherwise a condition that it should be completed within a given time, or ever completed, would be *Page 131 
impossible. From the character of the condition, it could not be a condition precedent. Possession and control of the land must necessarily accompany the construction and precede the completion of the road. The grant is not made to take effect on the happening of a certain event, but in presenti, and liable to be divested by the grantee's failure to perform the condition. (Seealso 5 Ham. Ohio Rep., 389; 9 East R., 170; 5 Pick. R.,
528; 18 Martin's Louis. R., 221; Co. Litt., 246, b.) Kent says (4 Kent., 129): "Conditions subsequent are not favored in the law and are construed strictly, because they tend to destroy estates." They can only be reserved for the benefit of the grantor and his heirs, and no others can take advantage of a breach of them. (4 Kent Com., 122, 127; 2 Black. Com., 154.) The plaintiff took his deed of the farm on the first of April, 1844. This was one year before the expiration of the time for constructing the road, and two years before the Hudson and Delaware Railroad Company conveyed to the defendants. At that time, therefore, there had been no breach of the condition; on the contrary, the right of the company was expressly recognized and reserved in the deed. Certainly, then, Dederer, when he conveyed, had no assignable interest.
A mere failure to perform a condition subsequent does not divest the estate. The grantor or his heirs may not choose to take advantage of the breach, and until they do so, by entry, or by what is now made by statute its equivalent, there is no forfeiture of the estate. This was the common law, and it has not been altered by statute so as to give a right of entry to an assignee in any instance not coupled with a reversionary interest, as in the cases of estates for years and for life, except in cases of leases, or rather of grants in fee, reserving rent. To that extent the law was changed in England by 32 Henry
VIII, ch. 34; and similar enactments have been made in several of the states. In this state, these provisions will be found at 1R.S., 748, §§ 23, 24 and 25, and are limited to grants or leases in fee *Page 132 
reserving rents, and to leases for lives and for years. As to other grants upon condition, the common law is unchanged. (2Kent, 123.)
There was a reason for the statutory change in the particular cases mentioned; for in them the grantor had an interest independent of the possibility of reverter. In the cases of a grant or lease in fee, though the grantor has no reversion, he has an interest by way of annual rents reserved, and in the cases of leases for lives and years, he has an actual reversion of what remains after the expiration of the particular estates. In these cases, therefore, he has a vested interest, and may well be permitted to assign with it, and his assignee to take with such interest, his right of entry for non-performance of a condition subsequent; for the right to enforce a forfeiture is necessary to the collection of the rents and to the protection and enjoyment of the reversion. But where a fee simple, without a reservation of rents, is granted upon a condition subsequent, as in this case, there is no estate remaining in the grantor. There is simply a possibility of reverter, but that is no estate. There is not even a possibility coupled with an interest, but a bare possibility alone. It has been said such possibilities were assignable in equity; but those were interests of a very different character, as I will presently show. So far from including these, Kent says (4 Kent's Com., 130): "A court of equity will never lend its aid to divest an estate for the breach of a condition subsequent," and the chancellor acted upon that rule in Livingston v. Stickles (8 Paige, 398).
All contingent and executory interests were assignable in equity, and would be enforced if made for a valuable consideration. (4 Kent, 269.) But these words had an ascertained legal signification; and it was never claimed that they were applicable to a case like that under consideration. It will hardly be pretended that Dederer's possibility of reverter was a contingent or an executory interest, in the legal sense of these words. *Page 133 
By the Revised Statutes (1 R.S., 725, § 35), expectant estates are descendable, devisable and alienable, in the same manner as estates in possession; and it is claimed that Dederer had an expectant estate. But we are relieved from all doubt on this point, by the fact that the statute itself has furnished the definition of the term "expectant estates." They are described (1R.S., 723, § 9) as including future estates and reversions; and these expressions are also defined in §§ 10 and 12. A future estate is one limited to commence in possession at a future day, either without the intervention of a precedent estate, or on the determination, by lapse of time or otherwise, of a precedent estate created at the same time. And by § 13, a future estate is said to be vested, where there are persons in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate; and "contingent," whilst the person to whom, or the event upon which they are limited to take effect, remains uncertain. A reversion is defined as the residue of an estate left in the grantor or his heirs, or in the heirs of a testator, commencing in possession on the determination of the particular estate granted or devised. I have been thus particular in transcribing these statutory definitions of "expectant estates," to show, what is apparent, that they are not in the least applicable to the case under consideration. Though, as Chancellor Walworth said (in 7 Paige, 76): "They include every present right andinterest, either vested or contingent, which may by possibility vest at a future day," yet they do not include the mere possibility of a reverter, which the grantor has after he has conveyed in fee on condition subsequent. He has no present right or interest whatever, and no more control over it than a son has in the estate of his father who is living. The provision of the Revised Statutes, by which expectant estates are made alienable, no doubt covers the same class of interests which, before, were only assignable *Page 134 
in equity. They are now assignable at law as well as in equity.
Kent says (4 Com., 370), that the grantor of an estate upon condition has only a possibility of reverter and no reversion; and in the note to page 11 of the same volume he says, "there is only the possibility of reverter left in the grantor and not an actual estate," citing Martin v. Strachan, 5 Term. R 107, (note). For examples illustrating the distinction between a naked possibility and a possibility coupled with an interest,see 4 Kent Com., 262, note b, and Jackson v. Waldron (13Wendell, 178), and Fortescue v. Satterthwrite, 1 IredellN.C.R., 570.
Suppose A sell to a banking corporation in fee, by express words, a lot of land on which to build a banking house. If the bank does not sell that land, but retains it till the expiration of its charter, it will revert to him, or, if he be dead, to his heirs. Now, what estate had A after he had conveyed in fee to the bank? None whatever. He had only a possibility of a reverter — a naked and very remote possibility, but nothing that he could convey to an assignee. He had sold his entire interest and received the full value of it. The presumption was it would never return. The law would not favor its return; and the grantee, who enjoyed the entire estate and upon whose volition alone itcould return, would not be likely to so far neglect his own interests as to permit its return. A voluntary reconveyance would be hardly more improbable than a reverter. Just such an estate and no other had Dederer in this land when he conveyed to the plaintiff. In both cases, the estates granted were upon condition. In the case of the bank, the condition was implied in law. (Angell Ames on Corp., 128.) In this case, the condition was expressed.
What is meant by possibilities coupled with an interest is of a very different character, as may be seen by reference to 4 KentCom., 262, and cases there cited, and 13 Wend., supra,
Jicklings in his treatise on the analogy between *Page 135 
legal and equitable estates, says, that under the generic term of possibilities coupled with an interest may be classed all contingent and executory interests in land, as springing and shifting uses, contingent remainders and executory devises.
The cases cited by the plaintiff's counsel, for the purpose of showing that the common law rule has been changed by the Revised Statutes, have no applicability. In Lawrence v. Bayard (7Paige, 70), the litigation was concerning personal property only, and the general remarks of the chancellor, as to the extent of the change made by the Revised Statutes, I have already quoted.
Upon the whole, my conclusion in this case is, that the Hudson and Delaware Railroad Company took from Dederer a fee upon condition subsequent; that at the time of the conveyance by Dederer to the plaintiff, there had been no forfeiture; and that Dederer had, at the time of such conveyance, no assignable interest in the premises.
The judgment of the supreme court should be affirmed.