## Harry Monroe v. Dewitt C. Bowen and another.

*Deed : Proviso : Condition : Timber : Removal.* A provision in a full covenant warranty deed that "the saw timber on said land is to be the property of the party of the first part, if he shall remove the same on or before April 1, 1870," entitles the grantor to the timber if removed before the day named, and gives him the right so to remove it; but so much of such timber as is not removed within the time specified, is conveyed by such a deed to the grantee.

*Deed : Timber : Removal : Acts of third party.* And the fact that a third person, after the lapse of one winter in which nothing was done towards removing the timber, procured the grantor's interest in the land to be attached, and when the latter was about to cut and remove the timber, prevented him from so doing by an order in such attachment suit, to st y waste, if done without any combination, collusion, or concert of action, with the grantee, would not operate to extend the time for such removal, or in any manner affect the respective rights of the parties under the deed, whether the attachment suit be rightful or wrongful.

Nor could it increase the grantor's rights under such deed, that he was prevented by pecuniary embarrassments, caused by such seizure of his property, from obtaining the release thereof by bond within the time limited for such removal ; his poverty or inability caused by such an act of a third party, though wrongful, can no more affect the grantee's rights under such deed, than if produced by any other cause.

*Deed : Timber : Title : Removal.* In an action involving the title to the timber under such a deed, after the expiration of the time limited for its removal, the question whether the grantee had been injured by delay in the removal, is quite immaterial.

*Statute construed : Conditions : Forfeiture.* The statute (*Comp. L. 1871*, § *4113*), providing that the breach of conditions which are merely nominal, shall not work a forfeiture, does not apply to such a condition as this, which is one of substantial benefit.

*Heard January 16 and 17.    Decided April 9.*

Error to Newaygo Circuit.

*Fuller & Standish,* for plaintiff in error.

*James Barton* and *E. L. Gray,* for defendants in error.

Christiancy, Ch. J.

This was an action brought by the plaintiff in error against the defendants in error, in the Newaygo circuit, for the conversion of the pine timber upon a quarter section of land in that county, sold by the plaintiff to one *Lyon,* by a deed dated November 24th, 1868, which, after conveying the land in the ordinary form, contained immediately after the description of the land, the following provision, upon which the main question in the case arises: " *and the saw timber on said land is to be the property of the party of the first part [the plaintiff], if he shall remove the same on or before the first day of April, in the year eighteen hundred and seventy."* This is the only allusion to the timber, to be found in the deed, which *is* in the ordinary form of a full covenant warranty deed.

The declaration, which is in " trespass on the case," sets out at length and with great particularity, the conveyance, and other facts which the plaintiff claims to constitute his title to the timber, and a conversion on the part of the defendants,—a course not usual in an action of trover, but, as it presents the whole case (which in an action of trover would ordinarily be left to the proof), it has enabled the defendants to demur, and thus to present the entire merits upon an issue of law, without the expense of a trial upon

the facts. This the defendants have done, placing the demurrer only upon grounds going to the merits, and not upon the form of the declaration, which will therefore be treated as a declaration in trover. And the taking and appropriation of the timber by the defendants being admit- ted by the demurrer, this declaration must be held good, if it shows a good title in the plaintiff at the time of the alleged conversion, and no justification of the acts of the defendants, claimed to constitute the conversion.

The circuit court sustained the demurrer and gave judg- ment for the defendants, and the case comes to us upon a writ of error.

The case stated in the declaration is substantially this: The plaintiff, prior to the execution of the deed to Lyon, was the owner of the land. The pine timber standing upon the land at the time of the sale, was worth one thousand two hundred dollars; but the price for which the land was sold and deeded was three hundred and fifty dollars [and it is alleged that this price was fixed without reference to the timber, which, it is alleged, was not sold. But as the deed speaks for itself upon this point, and must control, this allegation is of no consequence]. The deed was executed with the provision in reference to the timber, above quoted, and duly recorded. On the 12th day of August, 1869, this land, with other land which belonged to the plaintiff, was seized and levied upon by a writ of attachment, from the circuit court of said county, at the suit of one Hershberger.

On the 7th of December, 1869, plaintiff applied to a circuit court commissioner, in due form, for a dissolution of the writ and a release of the attached property; which was denied by the commissioner, and, "owing to pecuniary embarrassments arising from the said seizure of the plain- tiff's land, the plaintiff was prevented from obtaining their

release by the execution of the bond required by the stat-
ute in such case made and provided."

In January, 1870, plaintiff having made preparation to
cut and remove the pine timber, and entered upon this
tract of land for that purpose, with men and teams, Hersh-
berger, the plaintiff in the attachment, procured and served
upon the plaintiff (the defendant in attachment), an order
made by a circuit court commissioner, pursuant to the
statute, to stay waste on said tract of land.

The defendants had full knowledge of the service of
this order and of the efforts made by the plaintiff to
remove the timber.

The plaintiff, by reason of said attachment and order to
stay waste, was compelled to desist in his efforts to get the
timber, and failed to cut and remove the same by the first
day of April, 1870.

On the 21st day of April, 1870, Lyon (plaintiff's grantee)
sold and conveyed this tract of land to the defendants
in this suit, for three hundred dollars (the deed being duly
recorded).    But on the same day, and as a part of the
same transaction, defendants executed back to Lyon a bond
which,—stating its effect according to what plaintiff claims
it to have been, though it was somewhat more,—made the
joint effect of the deed and bond, a sale of the *timber only*.

On the 29th day of September, 1870, the attachment
suit, instituted against the plaintiff, was tried upon the
merits, and resulted in a judgment for the plaintiff in the
present suit (defendant in the attachment), and against
Hershberger (plaintiff in the attachment), of no cause of
action.

Said Lyon never improved said land, and the declara-
tion alleges that the plaintiff's failure to remove the timber
by the 1st day of April, 1870, was in no wise injurious to
Lyon, and that he sustained no loss or damage thereby.

The defendants, during the winter of 1870 and 1871, cut and removed from said land a large amount of the pine saw timber thereon, to wit, etc., and converted the same to their own use, to the damage of the plaintiff, etc.

The only point raised by the demurrer is, that the timber, not being removed from the land " by the first day of April, 1870," became the property of Lyon and his grantees.

They admit that, if the plaintiff had removed the timber prior to that day, it would have been his, within the express words and intent of the provision above cited, and that the deed gave him the right so to remove it prior to that date. And such was undoubtedly the right of the plaintiff under that provision, whether it be treated as technically a conditional exception, a conditional reservation, a conditional sale, or a license; and it is quite unnecessary to determine its precise character in this respect; since it was, at all events, a provision of contract which it was clearly competent for the parties to make, which was not repugnant to any rule or principle of law, and which, therefore, the courts would enforce according to the true intent of the parties. But the intention of the parties is just as clear that the plaintiff's right to the timber was to depend upon the condition, that he should remove it prior to the first day of April, 1870, and that his right to it should cease on that day, as that he should possess that right up to that time, whether this limitation upon his right be called a condition precedent or subsequent, or by any other name. Neither of the parties contemplated that any of the timber was to belong to the plaintiff, or that he should have the right to remove any, which should not be removed prior to that day. And the timber being included in the grant or conveyance of the land, except as it might at the option of the plaintiff be taken out of it under this provision, it is equally clear that the parties understood and intended that the

timber should be the property of the grantee, if not so removed; and such was clearly the legal effect of the deed, which must be recognized and enforced in this suit, unless some or all the matters set up by the plaintiff, were sufficient to excuse the removal within the specified period, preserve the condition and continue the right down to the time of the cutting and removal by the defendants. The defendants, as purchasers of the timber, stand in the right of Lyon, their vendor, and what he could have done, if he had not sold, they are justified in doing.

What, then, are the circumstances relied upon to save the condition, or extend the time of removal beyond the period fixed by the plaintiff's own deed, and upon the faith of which the grantee accepted it and paid the consideration? The only facts claimed to have this effect are these: that in August, 1869, after the plaintiff had had one entire winter in which he might have removed the timber, a third person issued an attachment against him, and seized upon this land, or the plaintiff's right in it; that the plaintiff after the attachment, in the winter of 1870 and 1871, being about to proceed to remove the timber, was stopped and prevented from removing it, by an order in the attachment suit, to stay waste; and, though the law gave him the right, by the execution of a proper bond with sureties, to have the property released, so that he could have proceeded with the removal, yet the pecuniary embarrassment arising from the seizure, prevented his availing himself of this right. And in September, 1870, the attachment suit was tried upon the merits, and the present plaintiff obtained a judgment against the plaintiff in attachment, of no cause of action; thus showing the attachment suit to have been instituted without good cause.

Now, if the defendants, by any combination with the plaintiff in the attachment, were even in part responsible

for its institution, especially if, by any concert, they had procured it to be set on foot or prosecuted for the purpose of depriving the plaintiff of the opportunity of removal, until the period fixed by the condition had expired, this would have been their own wrongful act, and a breach of the condition produced by their own wrongful act, and against the will of the plaintiff, would be no breach as to him, and of no avail to the defendants; and the plaintiff, in such case, would have been allowed a reasonable time after the obstacle thus wrongfully thrown in his way, was removed, to remove the timber.    But nothing of this kind is alleged; and how the defendants are to be prejudiced by the act of a third person, whether rightful or wrongful, in bringing the attachment suit against the plaintiff, with which they have had no concern, and over which they could exercise no control, it is not easy to discover.    Nor do we see how they could be thus prejudiced, though the law had given the plaintiff (defendant in attachment) no means of getting rid of the attachment till the time fixed by the condition had expired.

This is not like a case where the performance of a contract or a condition, legal when it was made, is prohibited or suspended by a statute, or valid public order of the sovereign authority for public purposes; but the obstacle is one created by a suit instituted by one party against another for the collection of a demand or claim.    Though the process and machinery for the administration of the law are made use of, it is still only at the instance of a party; and for all purposes bearing upon the present question, must be treated as the act of the party making use of such machinery.    All contingencies and risks of embarrassment of this kind must be estimated by parties in making their contracts.    And the risk of being in this manner disabled from removing the timber within the specified period, must

26 MICH.—67.

be held to have been assumed by the plaintiff, who was to do the work, and to derive the benefit from the performance of the condition; and not by his grantee, who was not to perform the condition, nor to receive a benefit, but rather to sustain a loss from its performance, and who had paid his money with reference to these terms, and had a right to rely upon them, and to make his calculations accordingly. If the act of the third person in procuring the attachment, was rightful, then plaintiff can have no right to complain of it, and ought to sustain the loss, even as between him and that third person; if it was wrongful, and produced an injury to the plaintiff, there is no reason why he should transfer that injury over to the defendants, who are as innocent of the wrong as he is, and compel them to sustain the injury instead of himself.

Such, it seems to me, must have been the result upon principle, though the law had provided no mode by which the plaintiff could have got his property released from the attachment and order to stay waste, until the time for the performance of the condition had elapsed. But the law having given him the right thus to remove the obstacle to his performance, of which he was prevented from availing himself, only by the pecuniary embarrassment arising from the seizure of his property, the obstacle to his performance, and his excuse for non-performance of this condition, resolve themselves entirely into his pecuniary inability and embarrassment thus produced. In plain English, it is this: The plaintiff says to his grantee, "My poverty prevented me from procuring the proper bond to enable me to release the property, and thus to avail myself of the benefit of the condition, by the time fixed in the condition; and that poverty was brought about by the wrongful act of the plaintiff in attachment. I have a right therefore to an extension of the time agreed upon."

The answer to this is, that as the defendants had nothing to do with that suit, this poverty, or inability of the plaintiff, cannot affect *them any more for being produced by this particular cause*, than if it had been produced in *any other way*, by the loss of crops, by unfortunate speculations, or by fire, or, than if the plaintiff had inherited his poverty, and had never been otherwise than poor.

The plaintiff may have been unfortunate, and suffered wrong from the plaintiff in the attachment suit; but his grantee and the defendants are in no way responsible for that, and are as innocent of that wrong as he is. Upon what principle, then, can the law transfer his misfortunes over to them? or why should *he* be relieved at *their* expense?

Unfortunately the cases are numerous in this world, in which the pecuniary inability of parties has precluded them from availing themselves of property rights which they might otherwise have secured; but as the law has not furnished the courts with the appropriate means for relieving this species of misfortune, the courts may commiserate, but cannot relieve them.

But the plaintiff alleges another reason why the time for the performance of this condition should be extended; that Lyon, his grantee, has sustained no damage by the delay.

This is an inquiry into which this provision of the deed precludes us from entering. The parties did not see fit to fix the time of removal of the timber at so uncertain a period, to be fixed by the verdict of a jury, as this test would supply; but, to avoid all disputes and litigation upon such a question, fixed for themselves a definite and specified day, upon which the rights of the respective parties were to depend, and upon which each could with certainty rely.

The timber not being removed by the day fixed, the

plaintiff's right to it ceased, and it vested absolutely in Lyon, the grantee, who afterwards sold it to the defendants, who took the same absolute title.

It was urged by the counsel for the plaintiff in error, that this condition falls within the provision of *section 4113 of Compiled Laws (of 1871),* and that the breach of the condition would not, therefore, work a forfeiture. But that section applies only to conditions which are merely nominal, not to those which "evince an intention of substantial benefit." The present condition, if performed, would have been of substantial benefit to the plaintiff; and its non-performance was equally beneficial to his grantee.

The judgment of the circuit court must be affirmed, with costs.

The other Justices concurred.