MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.

---

## MOORE *v.* PEAR.

TRESPASS—MUNICIPAL CORPORATIONS—POSSESSION—ESTOPPEL.

In trespass *quare clausum* against the servants of a village, the fact that the village authorities have assessed the premises for taxation in the name of plaintiff, and have collected the taxes from him, does not estop defendants to deny his possession at the time of the alleged trespass.

Error to Allegan; Padgham, J. Submitted January 9, 1902. Decided March 4, 1902.

Trespass *quare clausum fregit* by Horace D. Moore against John H. Pear and others. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Reversed.

*Charles Thew* (*Wilkes & Hoffman,* of counsel), for appellants.

*W. B. Williams & Son & Thompson* (*Dallas Boudeman,* of counsel), for appellee.

HOOKER, C. J. This action is trespass *quare clausum.* The *locus in quo* is wild land, unimproved except as the village of Saugatuck has fitted and used it for a part of its park. The defendants are its servants, who removed the plaintiff's tent by direction of the village council, and they defend upon the ground that the village had title and was in possession. Upon the other hand, the plaintiff claims to have been in possession at the time of the alleged trespass. Each party claimed title under tax and other

129 MICH.—33.

deeds and by adverse possession. The learned circuit judge did not submit the question of title to the jury, or pass upon it, but directed a verdict for the plaintiff upon the ground that, inasmuch as the village authorities had assessed and collected taxes against the plaintiff up to and including 1899, it was estopped thereby from denying his occupancy, and consequently the defendants were estopped from denying their guilt. The view taken is made plain by a discussion preliminary to the charge. The judge said:

"Now, it is admitted on the part of the defendants—at least it is not controverted—that the village of Saugatuck had assessed this property to Mr. Moore since 1896. I think Mr. Moore's testimony was that he had paid the taxes to the village of Saugatuck every year since 1885, except two years,—1887 and 1891,—in which he said it was not assessed to him or anybody, as he could find. I say it is not controverted that the records from the village show that it has been asssessed to Mr. Moore continuously since 1895. That is shown by the records themselves up to 1899, I think,—last year. His last assessment and receipt for taxes was 1899.

"Now, while counsel claim that the question of estoppel is settled and decided in this State by the case of *Hayes* v. *Livingston*, in 34 Mich. 384 (22 Am. Rep. 533), I am unable to see the application of that case to the facts in this case. In that case it was an estoppel *in pais*. There was no writing regarding that estoppel. It was simply the say-so, as against them, as to whether he did not say that a certain man owned the deed. In other words, it was an attempt to make a conveyance by parol, which, of course, could not be done in this State; and the doctrine was settled at that time that an estoppel *in pais* cannot be used where the title to realty is in question. But, in my judgment, it is not necessary that any conveyance should be worked from one party to the other, or that it should work any conveyance. It is not necessary that the title to this property in this case should be settled, under the evidence in the case. The question is, Can the village take a position, or such a position, by taxing this property upon their rolls, and the board of review and the president and secretary or clerk of the village certify that this property has been properly assessed, and take the money for

it, and then afterwards say that Mr. Moore, on this occasion in July last, was not entitled to the possession of that property? It is not necessary that they should say, 'We have got a title, and can be allowed to put in that title against Mr. Moore's.' It is not necessary to go to that extent. But if Mr. Moore was in possession of that property on the 3d of July last, and had been for three or four days in possession, peaceably, under the circumstances could the village undertake by force to put him out of possession? That is all there is of it. So it goes to the possession, and not to the title, really, and in that way the case of *Hayes* v. *Livingston* would not apply.

"The way I view the law is this: That the village having assessed this property, and having acknowledged by its solemn records that Mr. Moore was the occupant of this property, in 1895, 1896, 1897, 1898, and 1899, can they be heard now to turn around and say, when they attempt to remove him from the premises, 'We didn't lead you to believe that you should occupy, as you have been, these premises, and we shall remove you by force?'"

We are unable to concur in this. If we may assume, for the purpose of the argument, that the village really had title, it certainly could not be devested by the acts of the assessor and collector in assessing the premises belonging to the village in the name of the plaintiff and receiving taxes from him. The village cannot convey title to land through those officers, but must act through its council. Not having power to convey, their acts could not estop the village, even if a title to land could be conveyed by estoppel, which it could not, even if, as counsel contend, the assessment was the act of the council by reason of its being the board of review. This being so, we are unable to see that the fact that Moore was permitted to pay taxes throws any light upon the question of who was actually in possession. It may, standing alone, indicate good faith on the part of Moore, and therefore, in a sense, characterize his act as a *bona fide* attempt to get possession, as contradistinguished from an intentional and willful trespass. But the motive is not controlling. It was held by this court in the case of *Newcomb* v. *Love*, 112 Mich. 117 (70 N. W. 443), that trespass to real prop-

erty can never be maintained "when the possession of the property was in the defendant." Here is a claim that it was in the defendants, or, what was equivalent, in their master; but the court, notwithstanding the fact that much, if not the practically undisputed, proof showed that the village was in open possession and control, declined to permit the question to go to the jury, upon the theory that by receiving taxes it was precluded from insisting that the plaintiff's entry was an invasion of its rights of actual possession, and that it was therefore wrongful, but was bound to treat him as in actual possession, although his only evidence of possession was the recent erection of a tent, and although his entry was for the very purpose of an ouster. As indicated in *Newcomb* v. *Love, supra,* title and possession are not always in the same person. If they were, there would be little use for the action of ejectment. They may be separate and distinct; and, in our opinion, it was erroneous to hold that, although plaintiff did not show title, and admittedly entered upon the possession of the village by force, he must be presumed to have been in actual possession, because of the assessment and collection of taxes, the village's actual possession and *bona fide* claim of title to the contrary notwithstanding.

We have no occasion to discuss the question arising upon the claims of title, and the deeds, and other evidence relating thereto. As was intimated by the circuit judge, it is rarely advisable to attempt to make the action of trespass a substitute for the more appropriate one of ejectment. The litigation is so far practically fruitless, because we must decide the case upon an unimportant and inconclusive incident, leaving the parties to try their titles—the really meritorious question—when they get ready to do so.

The judgment is reversed, and a new trial ordered.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.