MAHAR v. GRAND RAPIDS TERMINAL RAILWAY CO.

1. EASEMENTS—RAILROADS—CONDITIONS.
   Under a written instrument granting to a railroad corporation a strip of land 50 feet in width for a right of way for a railroad, as expressed in the granting clause, conditioned upon the construction and completion of the railroad within three years from the execution thereof, the land to revert to the grantors, their heirs, successors, or assigns, at their option, if the condition was violated, defendant did not obtain the fee of the land subject to a condition subsequent, but an easement; so that the grantors conveying the premises from which the easement was reserved, by a deed that excepted the previously granted right of way, transferred to the purchaser of their interest the right to enforce the condition upon failure of the grantee to complete the road within the period named.

2. ESTOPPEL—EASEMENTS—FAILURE TO OBJECT.

Complainant, who testified that he protested against the work of constructing defendant's railroad right of way when defendant commenced, after breach of the condition in the grant of easement, was not estopped from enforcing his right of entry, where negotiations at once were commenced for settlement, and the parties later stipulated to submit the controversy to the court in chancery for determination.

Appeal from Kent; Brown, J. Submitted November 15, 1912. (Docket No. 41.) Decided March 20, 1913.

Bill by William Mahar against the Grand Rapids Terminal Railway Company for the removal of a cloud on complainant's title to land and for other relief. From a decree for complainant, defendant appeals. Affirmed.

*Frank W. Hine,* for complainant.

*Clapperton, Owen & Hatten,* for defendant.

KUHN, J. Clara C. Russell and Etta C. Boltwood were the owners in fee simple of certain real estate in the city of Grand Rapids, which is involved in this controversy, which property is located just west of Canal street, south of Mason street, and extending west to the center of Grand river.

On December 11, 1901, the said Clara C. Russell and Etta C. Boltwood conveyed, by an instrument in writing, to Marshall F. Buttars, trustee, of Ludington, Mich., a right of way 50 feet in width across the said real estate. This instrument provided:

"That the said parties of the first part, for and in consideration of the future construction, continued maintenance and operation of a first-class, standard-gauge steam railroad (over which shall be transported passengers and freight) within the time, limits and conditions hereinafter to be defined, and for the expected benefits to be derived therefrom by the parties of the first part, their heirs, successors or assigns, and for other good and sufficient consideration that may come to the parties of the first part,

their heirs, successors or assigns by reason of the construction, maintenance and operation of said railroad by the party of the second part, his successors, or assigns, which benefits and considerations are hereby fully acknowledged as being ample and sufficient, have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell, convey and quitclaim unto the party of the second part, his successors or assigns, for a right of way for a railroad forever, upon the following conditions: That the construction of said railroad shall be on, along and within the limits of this grant as hereinafter defined; that it shall be constructed across and over the pieces or descriptions of property as hereinafter described, and no deviation therefrom shall be made by the party of the second part, his successors or assigns, without first obtaining the consent and approval in writing of the parties of the first part, their heirs, successors or assigns; (that the construction of said railroad shall be fully completed and be in operation for the transportation of passengers and freight on or before three years from the date of this instrument), and when so completed, shall have full and direct connection with one or more of the steam railroads now in operation in, to and from the city of Grand Rapids, located south of what is known as the Sixth street bridge in said city, in default thereof this grant shall be void, and the said right of way herein conveyed shall revert to, and the title thereto revest in, the parties of the first part, their heirs, successors or assigns; that this grant or conveyance of a right of way for a railroad shall at the option of the parties of the first part, their heirs, successors or assigns, be null and void and the title thereto revest to the parties of the first part, their heirs, successors or assigns, if the party of the second part shall fail in process of construction, within the limits of the city of Grand Rapids, of the roadbed for the railroad herein contemplated before the expiration of two years from the date of this instrument. The parties of the first part reserve to themselves, their heirs, successors and assigns, within the limits of this grant, the right of sewage and drainage under the tracks of the party of the second part, or those holding from and under him, his successors or assigns; said right of sewage and drainage, if made use of, to be at the cost of the parties of the first part, their heirs, successors or assigns, without damage or loss to the rights of business of the party of the second part, his successors or

assigns. It is further provided and conditioned that if, after the construction of said railroad, the party of the second part, or his successors or assigns, shall at any time in the future cease to maintain and operate said railroad for the transportation of passengers and freight, for a continuous period of one year, then, in such case, this grant and conveyance shall be void and the premises herein described shall revert to and revest in the parties of the first part, their successors or assigns, the same as if this conveyance had not been made. The hereinafter-described premises, embracing both land and water, are granted and conveyed to be used solely for a right of way for a railroad and its usual requirements."

On November 1, 1902, said Clara C. Russell and Etta C. Boltwood sold the land described in the bill of complaint to the complainant on contract, and later, on May 6, 1904, gave him a warranty deed of said property. Both the contract and the deed, in the description of the land, excepted therefrom the right of way, as follows:

"Excepting the conditional right of way heretofore granted to the Ludington Railroad Company."

After the execution of the contract, and in the summer of 1903, the complainant filled in his lot and removed a large building 50x100 feet in size, thereon, which he thereafter occupied as a factory. In the latter part of 1903, or early in 1904, the defendant, having become the assignee of the rights of Mr. Buttars, caused a preliminary survey to be made of the proposed railroad, and later, in the fall of 1904, completed a flood wall along the river. Nothing further was done by the defendant towards building said railroad until May 5, 1905, when the grading for the same was commenced, and grading was commenced on the property of the complainant in August, 1905. It is undisputed that the road was not completed nor freight or passenger trains run in 1905. It is the claim of the complainant that when the defendant company started to grade for the railroad he protested against it and thereafter consulted his attorney; that negotiations were entered upon with representatives of the railroad company looking to

the possible settlement of the controversy, but no settlement was arrived at, and a stipulation was entered into by the parties to submit the whole matter to the Kent circuit court, in chancery.

The complainant occupied the building on the premises for a rug and carpet manufactory, and the right of way occupied by the defendant runs within seven feet of the rear of complainant's building. It is the claim of the complainant that the right of way prevents him from having access to his building in the rear with teams and rigs, and cuts off his access to the river and the use of the river bank. The dirt, soot, and sparks emitted from the locomotives of the defendant are also claimed to have done damage to his business of cleaning and manufacturing carpets and rugs. It is also claimed by complainant that he intended to build a barn and storage warehouse on the land in the rear of the building now occupied by the railroad, but that he has been deprived of this right by the defendant; and that he has been obliged to go to the expense of renting barn room elsewhere, and has lost the advantages and profits he could have had from a storage warehouse in connection with his business.

The first question, and, as it seems to us, the all-important one in this litigation, is to determine the legal effect of the instrument of December 11, 1901. It is claimed by the defendant that it was a conveyance in fee with a condition subsequent. Complainant insists that it simply created an easement, and that the fee remained in the grantors, subject to the easement granted therein. A careful study of the instrument itself satisfies us that it was the intention of the grantors simply to grant a right of way across the premises in question, and not to convey the fee to the land. This intention, we think, can be gathered from the express language of the instrument itself; in the granting clause this language being used, "for a right of way for a railroad." Again:

"This grant shall be void and the said right of way

herein conveyed shall revert to and the title thereto revest in the parties of the first part."

Again:

" This grant or conveyance of a right of way for a railroad shall at the option of the parties of the first part, their heirs, successors, or assigns, be null and void and the title thereto revest to the parties of the first part, their heirs, successors or assigns."

The instrument further provides that no deviation shall be made by the party of the second part without first obtaining the consent and approval, in writing, of the parties of the first part, and also reserves to the parties of the first part the right of sewage and drainage across the premises. The language in the instrument brings it within the rule laid down in the case of *Pinkum* v. *City of Eau Claire*, 81 Wis. 307 (51 N. W. 552), in which the court said:

" The deed set forth in the complaint undoubtedly granted to the city an easement over the lands described in the deed for the purposes set forth therein. It was an easement in gross, because it does not appear to be appurtenant to any estate in the land, and it was upon condition. Whether the condition was precedent or subsequent is not necessary to be decided upon this appeal, and is not decided. The easement was also in perpetuity.
" That an easement may be created in fee is well settled. The fee of land may be in one person, and the fee of an easement upon such land in another. 2 Bl. Com. chap. 7, pp. 106, 107; *Story* v. *Railroad Co.*, 90 N. Y. 122, 158 [43 Am. Rep. 146]; *Child* v. *Chappel*, 9 N. Y. 255; *Nellis* v. *Munson*, 108 N. Y. 453 (15 N. E. 739). Technically, an easement in fee must be appurtenant to land; and consequently, the easement here created, being in gross, is not strictly an easement in fee, but, being granted to the city, ' its successors and assigns,' it is capable of assignment, and is therefore undoubtedly in perpetuity, through not technically in fee. *Poull* v. *Mockley*, 33 Wis. 482. The difference is purely technical, and does not affect any substantial right in this case. Therefore, when this deed was executed and delivered, the fee of the land remained in the grantors, Mead and Bolles, subject to

the conditional easement in perpetuity created by the deed. Being the owners in fee of the land, they could, of course, convey it to another; and their grantee would stand in their shoes. Why, then, cannot such grantee bring an action against one claiming an easement on condition to take advantage of condition broken or enforce its performance? It is said that he cannot because of the long-settled, common-law principle that a condition in a deed can only be reserved to the grantor or his heirs, and not to a stranger. This rule applies to land conveyed upon condition subsequent, and the reason of the rule is that the estate is not defeated, though the condition be broken, until entry by the grantor or his heirs, and there is nothing to assign, save a mere right of entry, which at common law is not assignable. *Nicoll* v. *Railroad Co.*, 12 Barb. [N. Y.] 460; *Id.*, 12 N. Y. 121; 1 Greenl. Cruise, tit. 13, chap. 1, § 15.

"No such rule can apply here, because the reason does not exist. In this case the plaintiff does not claim as the assignee of a mere right of action or right of entry on land, but he claims as owner in fee of land burdened with an easement granted upon condition, which condition is alleged to have been broken. It would be a singular rule of law which would forever prevent the owner in fee of lands from questioning the right of another to maintain an easement upon his land, when there existed a violation of the express condition upon which the easement was granted. No such rule exists."

See, also, *Reichenbach* v. *Railway Co.*, 10 Wash. 357 (38 Pac. 1126).

Numerous authorities are cited in support of the proposition that the right to take advantage of the breach is neither assignable nor severable, and the leading case of *Nicoll* v. *Railroad Co.*, 12 N. Y. 121, is relied upon. In this line of cases, however, the court in each instance held the conveyance to be a granting of the fee in the land, with a condition subsequent; but, as outlined in the decision quoted, *supra*, the rule in case of an easement is different, as the title to the land has never been divested, and the owner of the land, whoever he may be, can take advantage of the breach. It is further contended by the defendant that the language used in the conveyance to com-

plainant, "excepting the conditional right of way heretofore granted to the Ludington Railroad Company," created an exception of the land described in the conveyance of the right of way, and that the complainant never purchased the land upon which the right of way is situated. If such had been the intention of the parties, it would have been easy to so have expressed themselves in the deed. As this court said in the case of *Bolio* v. *Marvin*, 130 Mich. 82 (89 N. W. 563):

"There was not the slightest occasion to include this land in the deed, unless some interest was intended to be vested in the grantee."

The case of *Reynolds* v. *Gaertner*, 117 Mich. 532 (76 N. W. 3), is called to our attention, but in that case the exception expressly provided for the exemption of a certain specified amount of land; the following language being used, "except two and forty-six hundredths acres to the Chicago & Canada Southern Railroad."

In the instant case the language used in this conveyance, it seems to us, is very significant, and clearly indicates that the grantors did not claim to except or reserve a fee in the land. We think the rule is well established in Michigan that the assignee or grantee has been held to be the proper person to enforce the forfeiture of an easement, and is entitled to all the rights his or her grantor might be, or have been, entitled to. In this connection the language in the instrument of December 11, 1901, is significant:

"The grant shall be *void* and said right of way shall *revert* to, and the title thereto *revest* in, the parties of the first part, their heirs, successors or *assigns*."

*French* v. *Lumber Co.*, 135 Mich. 424 (97 N. W. 961); *Williams* v. *Flood*, 63 Mich. 487 (30 N. W. 93); *Gamble* v. *Gates*, 92 Mich. 510, 514 (52 N. W. 941); *Monroe* v. *Bowen*, 26 Mich. 523; *Johnson* v. *Moore*, 28 Mich. 3; *Haskell* v. *Ayres*, 32 Mich. 93; *Macomber* v. *Railroad*

*Co.*, 108 Mich. 491 (66 N. W. 376, 32 L. R. A. 102, 62 Am. St. Rep. 713); *City of Detroit* v. *Railroad Co.*, 23 Mich. 173, 214, 215.

It is urged that the principle of equitable estoppel should be applied, because complainant waited until expensive improvements, which were a great benefit to his property, were made; and that he stood by without objection and allowed defendant to expend large sums on the right of way.

Complainant testified that some time in 1905, when the construction was begun, he protested to the men in charge of the work, and that he ordered them off his property, and that when they failed to do so he placed the matter in the hands of his attorney, and that no further steps were taken, because immediately negotiations were entered upon with a view of leading to a settlement. These negotiations could amount, at the most, only to a parol license to the defendant to build its road. We do not think that it can be said, under these circumstances, that complainant has estopped himself from asserting his rights. *Wood* v. *Railroad Co.*, 90 Mich. 334 (51 N. W. 263).

To hold that the complainant, in this case, is estopped from asserting his alleged rights would, in view of the fact that the instrument of date December 11, 1901, simply granted an easement, operate as a transfer of the title to real estate; and title cannot be obtained in that way. *Nowlin Lumber Co.* v. *Wilson*, 119 Mich. 406 (78 N. W. 338); *Minneapolis, etc., R. Co.* v. *Marble*, 112 Mich. 4, 10 (70 N. W. 319); *Harlow* v. *Railroad Co.*, 41 Mich. 336 (2 N. W. 48); *Nims* v. *Sherman*, 43 Mich. 45, 52 (4 N. W. 434); *Stevens* v. *City of Muskegon*, 111 Mich. 72, 83 (69 N. W. 227); *Petit* v. *Railroad Co.*, 119 Mich. 492, 493 (78 N. W. 554, 75 Am. St. Rep. 417); *Stewart* v. *McLaughlin's Estate*, 126 Mich. 1, 5 (85 N. W. 266, 87 N. W. 218); *Moore* v. *Pear*, 129 Mich. 513, 515 (89 N. W. 347).

The judge, in his decree, provided—

" That said defendant, within 30 days of the date of this decree, may commence proceedings under the statute to condemn said property now occupied by it and described in the fifth paragraph of this decree, and in default thereof that complainant, within 10 days of the expiration of said 30-day period, shall execute, acknowledge, and deliver to said defendant a deed of said premises described in the fifth paragraph of this decree, upon the payment to complainant by defendant the sum of eight hundred and fifty dollars ($850), which sum is hereby adjudged and decreed to be the value of said property, together with such other damages as complainant has sustained by reason of the acts and possession of defendant, as aforesaid, and also pay the costs of this suit to be taxed."

The stipulation by which this cause was brought into court provided that the court should determine the value of the premises and damages, past, present, or prospective, suffered by the complainant. An examination of the record satisfies us that the court was justified in fixing the amount of damages that he did, and his determination with reference thereto will not be disturbed.

The decree is affirmed, with costs.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.