THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENTS, *v.* DANIEL STEPHENS AND OTHERS, APPELLANTS.

*What lands taken for canals may be abandoned — Const. of 1846, art. 7, § 6 — power of legislature to dispose of canals — Letters patent — presumption as to issue of.*

Section 3 of chapter 352 of 1849, authorizing the commissioners of the land office to convey "lands taken for canal purposes," which the canal board shall have determined may be sold beneficially to the State, and chapter 267 of 1857, authorizing them to convey any "lands taken for the purposes of the canals of this State" when the canal board shall have determined that they have been

abandoned, authorize a conveyance of lands taken for the bed of the canal itself, when that portion of the canal has fallen into decay, and ceased practically to be used as a canal.

Section 6 of article 7 of the Constitution of 1848, providing that "the legislature shall not sell, lease or otherwise dispose of any of the canals of this State, but they shall remain the property of the State and under its management forever," only applies to the canals while they continue to be canals, and not to cases in which, as the result of natural causes, not fraudulently produced, the canals cease to be used as canals and are of no further use to the people of the State.

In determining the extent of the authority conferred upon a board of State officers, resort may be had to the subsequent legislative construction of the statutes conferring the same.

Letters patent are presumed to have been regularly issued.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

The action was brought to vacate letters patent issued by the governor of this State to the defendant Daniel Stephens and others, of the southern terminus of the Chemung canal.

The justice before whom the action was tried found, among other things, that the canal commissioners of this State, in pursuance of an act of the legislature thereof, passed April 15, 1829, authorizing and requiring them to construct and complete a navigable canal from the head waters of Seneca lake to the Chemung river at Elmira, took and appropriated for that purpose lands hereinafter described in letters patent issued to the defendants, Daniel Stephens, Frederick C. Steele and one Elijah P. Brooks, and constructed and completed said canal in 1832, and in the construction and completion thereof, for the purpose of permitting the passage of boats, rafts and other water craft from said river to and upon the canal, and from said canal to and upon the river, constructed near the intersection of said canal with said river a canal lock, known as lock forty-nine, the north end of which was about 250 feet from the intersection of said canal with the river; that said canal was, including said lock and the intersection of said canal with said river, one of the canals of this State when the Constitution of 1846 took effect; that said lake and said river were each navigable waters, and that one object of authorizing and requiring the constructing of said canal was to connect the navigable waters of Seneca lake with those of Chemung river, and not only to increase for public benefit the use of said lake and river, but to gain

for the canal profits to be derived from the commerce of both lake and river. Afterwards the Junction Canal Company, a private corporation, constructed a navigable canal, known as the Junction canal, in which the State had no interest and over which it had no control, commencing at and intersecting the Chemung canal about one mile north of its terminus at the Chemung river, and extending therefrom in a south-easterly direction about one and a half miles to, and then intersecting the Chemung river about two miles below or down the river from the southern terminus or intersection of the Chemung canal with the river; that said junction canal was completed and opened for business in 1856; that the southern terminus of the Chemung canal, including lock forty-nine, continued to be used as it had theretofore been used, for the purpose of navigating boats, rafts and other craft from said river to and upon said Chemung canal, and from said canal to and upon said river, until 1858, after which it was permitted to become out of repair, insomuch that a portion of it, including said lock forty-nine, became unfit for use until it should be placed in repair; that while the southern terminus of said canal, including said lock forty-nine, was in this condition unfit for use, and prior to the 11th day of June, 1866, one Charles Hulett and others applied to the canal board to have certain lands declared abandoned; that, on the 17th day of July, 1866, the commissioners of the land office resolved that certain lands in the city of Elmira, declared abandoned by a resolution of the canal board passed that day, be granted to Daniel Stephens, Frederick C. Steele, Elijah P. Brooks, Charles Hulett and William Beach, grantees of the original owners, etc.; that, on the said seventeenth day of July, the governor of this State by letters patent granted and quitclaimed to the defendants, Daniel Stephens, Frederick C. Steele and to Elijah P. Brooks a parcel of the said premises; that said premises described in said letters patent included said lock forty-nine, then an existing and material portion of the Chemung canal, though at the time out of repair and unfit for use, and which was the only passage owned by the State through which boats, rafts or other water craft could be passed from said canal to and upon the river, or from said river to and upon the canal, or for the water let into said canal for the purposes of navigation to pass therefrom at or within several miles of its southern terminus, and for that purpose alone it was

material and necessary not only for the preservation of the canal north of it, but to prevent an overflow of the banks of the canal, thereby injuring the property of private owners, unless other means were devised for the discharge of the waters; that the governor issued his letters patent in ignorance of the fact that the premises described therein embraced lock forty-nine; that the same or any portion thereof had not been abandoned by reason of any other means provided by the State for the passage of boats or other craft to and from said river, and that said lock was then an existing portion of the Chemung canal, though out of repair and unfit for use; that each and all of the defendants rely upon and claim title under said letters patent, and found as a conclusion of law from the foregoing facts, that the plaintiffs were entitled to the judgment of this court that said letters patent be annulled or removed as a cloud upon the plaintiff's title to said premises, with costs to be adjusted.

*C. S. Fairchild,* attorney-general, for the plaintiff.

*Robert Stephens,* for the defendants Stephens and Steele.

*Turner, Dexter & Van Duzer,* for the defendant S. B. Hubbell.

*Rufus King,* for the defendants L. A. and J. S. Humphrey.

SAWYER, J.:

It is to be presumed in the first place that these letters patent were regularly issued. (*People* v. *Mauran,* 5 Den., 398; *Jackson* v. *Marsh,* 6 Cow., 282.) Their validity depends, therefore, in the first place, upon the construction to be given to the various acts of the legislature conferring authority upon the canal board to sell and dispose of lands taken for the use of the canals. Section 3 of chapter 352, Laws of 1849, authorizes the conveyance, by the proper officers, of lands taken for canal purposes, and which the canal board shall, by resolution, determine, may be sold beneficially to the State. And in 1857, by chapter 267, the legislature enacted, section 1: "Whenever the canal board shall, by resolution, determine that any lands taken for the purposes of the canals of this State have been abandoned * * * it shall, or may, be lawful for the commis-

sioners of the land office to sell, grant and convey the right, title and interest of the State in such lands." Section 2 : " The original owner or owners of said abandoned canals, their heirs or assigns who may be the owners of lands adjoining thereto, shall have the preference, etc., in purchasing." The power to grant the lands in question depends upon the authority conferred by these statutes upon the canal board.

And it is contended that because some part of these lands once constituted a portion of the canal itself, therefore the canal board had no right under these statutes ever to declare it abandoned, and per consequence, the commissioners of the land office ever to grant or convey the same.

It seems an over refinement in the construction of language to say that the expressions " lands taken for canal purposes," and " lands taken for the purpose of canals," necessarily import lands that have not been used for the bed of the canal, and that the authority to declare, by resolution, " that lands taken for the purposes of the canal have been abandoned," may not include a portion of the canal that has ceased to be used, fallen into decay, been filled up and ceased practically any longer to be a canal. If we may resort to legislative construction to determine whether authority was intended by these statutes to be given to abandon what had once been a portion of the canal, it will appear that the portion of the canal upon the lands covered by the defendants' patent has been most unequivocally treated as abandoned.

By chapter 471, Laws of 1864, the legislature authorized the canal commissioners to build, in place of lock 49, an arched stone culvert to act as a waste-weir.

By chapter 785, Laws of 1872, the legislature authorized a portion of the bed of this canal to be used for a public street, and by chapter 607, Laws of 1875, authorized the city of Elmira to fill in and use a certain other portion of the canal bed for a street.

Resort may also be had to the title of a statute, to aid in determining its meaning, when its meaning is doubtful. (*Jackson* v. *Gilchrist*, 15 Johns., 89 ; *Constantine* v. *Van Winkle*, 6 Hill, 184 ; *U. S.* v. *Fisher*, 2 Cranch, 358 ; Potter's Dwarris on Statutes, 269.) And recurring to the title of this statute (chap. 267, Laws 1857), we find it thus : " An act in relation to abandoned canals." It would seem, therefore, that the terms " lands taken for the purpose of the

canals," and "lands taken for canal purposes," might include the former bed of an abandoned or disused canal, or a portion of it. (See, also, chap. 361, Laws of 1869.)

I do not think section 2 of chapter 169, Laws of 1862, was intended to limit the previous acts or construe them. That act specially mentions the canals intended to be affected by it.

The act is, "An act in relation to the enlargement and completion of the canals," and refers to the canals mentioned in section 3 of article 7 of the Constitution, among which is not the Chemung canal. That had long prior to the Constitution been completed, and its enlargement not provided for or contemplated.

These considerations lead to the conclusion that the letters patent issued in this case and the resolution of the canal board were authorized by the statute and fully warranted by the facts, no fraud being claimed or proven, unless they are in violation of section 6, article 7 of the Constitution of 1846. In *The People* v. *Dayton* (55 N. Y., 367), the court say : " The practical construction given by the legislature to a constitutional provision acquiesced in for years, acted upon by the executive and administrative officers, unquestioned for years, is entitled to controlling weight in its interpretation."

The legislature, since the adoption of the Constitution of 1846, have passed various acts for abandoning and selling portions of the canal, which have received the approval of the executive and have never been questioned; among which are chapter 214, Laws of 1850; chapter 361, Laws of 1869.

The evidence clearly establishes, and the findings of the learned judge before whom this case was tried confirm, the fact that, for all practicable purposes, this portion of the canal between the basin and the Chemung river, covered by this grant, had become utterly useless to the State and had been practically abandoned as far back as 1858. The clear and obvious meaning of this section of the Constitution is, that the State will not lease and sell the canals while they continue to be canals; but will it be contended that if, by any convulsion of nature, the bed of the canal, or any portion of it, should be reversed, so that instead of a ditch there was a ridge, that the State would be bound to keep the lands, worthless for navigation, worthless to the State, worthless and unusable for all the purposes for which they were obtained. If so, the action of the canal

board in selling the old bed of the Erie canal, where curvatures had been cut off to straighten it, and the old channel abandoned, was clearly unconstitutional; and yet I fail to find that the strictest constructionist has ever so held.

But it will be said that by this theory the whole of the canals might eventually be absorbed; granted; and what then? If the gradual abandonment be the result of natural causes, be not fraudulently produced, by which the canals cease to be canals and of no further use to the people of the State, clearly the Constitution did not contemplate that the people should remain the owners of these waste lands forever; they are not to be leased or sold so long as they continue to be canals. When they cease to be canals, the reason for the inhibition ceases, and with it the inhibition. *Cessante ratione legis cessat ipsa lex.* These views render it unnecessary to consider the other questions raised by this appeal.

The judgment should be reversed and judgment directed for the defendants, dismissing plaintiff's complaint with costs.

LEARNED, P. J., and BOARDMAN, J., concurred.

Judgment reversed and judgment ordered for defendants, dismissing complaint with costs.