Shipman, J.
The bills in equity in these two cases are ^brought to restrain' the alleged infringement of letters patent of the United States, No. 274,290, granted to Thomas A. Edison, March 20, 1883, and No. 369,280, granted to the plaintiff, August 30, 1887.
The bill in Xo. 570, which was tiled October 10, 1887, alleges the assignment of Xo. 274,290, on April 6, 1883, to the “ Edison Electric Light Company,” a Xew York corporation, and the subsequent formation of the plaintiff, called •“ Edison Electric Light Company,” by the consolidation of said “ The Edison Electric Light Company,” and another Xew York corporation called the Edison Company for Isolated Lighting, under and pursuant to chapter 367 of the laws of the State of Xew York.
It further avers that, by virtue of the consolidation, the ■ -title of the Edison Electric Light Company to Xo. 274,-5)90 passed to the consolidated company, and that pursuant to a resolution of the executive committee of the said first named company, passed on December 30, 1886, and ^before the consolidation, the company thereaftér, and as ■of that date, executed and delivered an assignment of said patent to the plaintiff.
The defendant lias filed a plea which sets forth that, •under the patent laws of the United States, the consolidation proceedings of themselves were wholly incompetent to transfer to or to vest in the complainant any title in or to the patent in suit.
As to the assignment by an instrument in writing, it alleges, in substance, that the consolidation was consumma *121 ted on December 8i, 1886 ; that, by the act of consolidation, the corporate existence of each of the old companies was terminated ; that the said deed of assignment was not •executed or delivered until after the dissolution and termination of the life of the alleged assignor ; and that no instrument in writing assigning and transferring the patent in suit to the complainant was executed and delivered during the corporate existence of the said The Edison Electric .Light Company, or while it had any power or capacity to make such assignment; and that the complainant had not, •at the date of the .filing of the bill, any title on which it •could bring suit.
By stipulation, the following facts are established for the purposes of the hearing on the plea :
That on December 30, 1886, the company known as The Edison Electric Light Company,” was a corporation •duly organized and existing under the laws of New York.
That-at that date the said company was the owner of the patent in suit.
That the consolidation proceedings referred to in the bill ■of complaint took place and that the consolidation was effected on December 31, 1886.
That on December 30, 1886, the executive committee of . the said “The Edison Electric Light Company” passed a resolution authorizing and directing the president and secretary of the company to “ execute under seal of the company, and deliver to said new company, all assignments, patents and transfers of contracts and rights of every kind.”
That the said officers did not act on this resolution (at least as regards the patent in suit) until after December 31, 1886; that on January 18, 1887, a written assignment of said patent was drawn and was executed in the name of “The Edison Electric Light Company,” by Edward II. Johnson, as president thereof, and the seal of the said old company was thereto affixed by E. S. Hastings, as secretary of the said company, who appended his signature, as secretary, to said assignment, the said Johnson and the said *122 Hastings having been respectively the president and the secretary of the said company at the time of the consolidation and of said vote; and thereupon the document was delivered to the consolidated company.
Sections 5 and 6 of chapter 367 of the laws of 1884, under which the two companies were consolidated are as-follows:
“ Section 5. Upon the consolidation of the said corporations and the organization of such new company, as herein-before prescribed, all and singular the rights, privileges, franchises and interests of every kind belonging to or enjoyed by the said several corporations so consolidated, and every species of property, real, personal and mixed, and things in action thereunto belonging, mentioned in said agreement of consolidation, shall be deemed to be transferred to and vested in and may be enjoyed by such new corporation without any other deed or transfer; and such new cor-poration shall hold and enjoy the same, and all rights of property, privileges, franchises and interests in the same manner and to the same extent as if the said several companies so consolidated had continued to retain the title and transact the business of such corporations, and the title to-real and personal estate, and rights and privileges acquired and enjoyed by either of the said corporations shall not be-deemed to revert or be impaired by such act of consolidation, or anything relating thereto.
“Sec. 6. The rights of creditors of any corporation that shall be so consolidated shall not in any manner be impaired1 by any act of consolidation, nor shall any liability or obligation for the payment of any money now due or hereafter to become due to any person or persons, or any claim or demand in any manner, or for any cause existing against any such corporation or against any stockholder thereof, be in any manner released or impaired; but such new corporation is declared to succeed to such obligations and liabilities, and to' be" held liable to pay and discharge all such debts and liabilities of each of the corporations that shall be *123 so consolidated in the manner as if such new corporation had itself incurred the obligation or liability to pay such debt or damages; and the stockholders of the respective corporations so entering, into such consolidation shall continue subject to all the liabilities, claims and demands existing against them as such at or before such consolidation ; and no suit, action or proceeding then pending before any court or tribunal in which any corporation that may be so-consolidated, is a party, or in which any such stockholder is a party, shall be deemed to have abated or been discontinued by reason of any such consolidation ; but the same may be prosecuted to final judgment in the same manner as if the said corporation had not entered into the said agreement of consolidation; or the said new corporation may be substituted as a party in the place of any corporation so consolidated as aforesaid with any other corporation or corporations^ and forming such new corporation, by order of the court in which such action, suit or proceeding may be pending.”
The Revised Statutes of the State of New York (section 9 of Title 3, Chap. 17, Part 1) provide as follows:
“ Sec. 10. Upon the dissolution of any corporation-created or to be created, and unless other persons shall be appointed by the legislature, or by some court of competent authority, the directors or managers of the affairs of such corporation at the time of its dissolution, by whatever name they may be known in law, shall be the trustées of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the corporation, collect and pay the outstanding debts, and divide among the stockholders the moneys ‘and other property that, shall remain after the payment of debts and necessary expenses.”'
Sec. 4898 of the Revised Statutes provides that “ every patent or any interest therein shall be assignable in law, by an ins eminent in writing.”
The position of the defendant is, that the consolidation proceedings did not and could not vest the legal title of the patent in suit in the plaintiff, but an instrument in writing, *124 signed by a properly authorized person, was necessary to ■convey the legal title (Ager v. Murray, 105 U. S. 126); that no written conveyance was made until after the dissolution and death of the holder of the legal title, when the powers both of the corporation and its officers had ceased to exist, .and that the legal title has therefore never been conveyed to the plaintiff.
■ It must be assumed as' true, that the entire equitable title and interest in said patent vested in the plaintiff by virtue of the proceedings of consolidation, but that no written conveyance or assignment having been executed on December 30,1886, the bare legal title remained outstanding. It is further true that if, as the result of consolidation, the old •corporation had wholly ceased to exist, it could not act thereafter as a corporation, and the written assignment did not confer the legal title npou the plaintiff.
It is furthermore true that the question of the continuance of the company’s life depends upon those statutes under which consolidation takes place, and which relate to the dissolution of corporations, but that where a new corporation is created to take the place of two old corporations, ■and has the grant of a new charter, the old corporations'are .at an end, except so far forth as corporate life is prolonged by special legislative enactment (National Bank v. Colby, 21 Wall. 609; Pomeroy v. Bank of Indiana, 1 Id. 23; Central Railroad, &c. Co. v. Georgia, 92 U. S. 665; Railroad Co. v. Georgia, 98 Id. 359).
The question then is, whether the intent of the various statutory provisions was that the old corporation should be entirely dissolved, so as to be without power to do anything necessary to close its business.
• The serious consequences, which, according to the stringent rules and ideas of the common law, followed the dissolution of a corporation, are well known. “According to the old settled law of the land, where there is no special ■statute provision to the contrary, upon the civil death of a •corporation, all its real estate, remaining unsold, reverts *125 back to the original grantor and his heirs. The debts due to and from the corporation are all extinguished. Neither the stockholders nor the directors or trustees of the corporation can recover these debts or be charged with them in their natural capacity; all the personal estate of the corporation rests in the people as succeeding to this right and prerogative of the crown, at common law ” (2 Kent's Com. 317). But the learned author proceeds, in a note, to say,, that ‘cthe rule of the common law has in fact become obsolete and odious. It has never been applied to insolvent or dissolved moneyed corporations in England. The sound doctrine now is, as shown by statutes and judicial decisions,, that the capital and debts of banking and other moneyed corporations constitute a trust fund and pledge for the payment of creditors and stockholders, and a court of equity will lay hold of the fund and see that it is duly applied.”
To the same effect are Mumma v. Potomac Co., 8 Peters, 281; Curran v. State of Arkansas, 15 How. U. S. 304; Bacon v. Robertson, 18 Id. 480.
Acting upon these modern ideas, which are based upon the fact that “ corporations like this, of a private nature,, are in truth little more than private partnerships” (Foss v. Harbottle, 3 Hare, 461), the legislature of New York provided that in cases of consolidation, no claim, for any cause existing, should be impaired, and no pending suit in favor of or against the old corporation should be abated by reason of such consolidation.
And furthermore provided, by a general statute, that the-managers or directors of any dissolved corporation, at the time of its dissolution, if none others were appointed, should be the trustees of its creditors and stockholders, with full power to settle its affairs.
The managers, who were to be, upon the dissolution, the-trustees for the stockholders, appointed the president and secretary to transfer the patents and other property. If these persons had refused to assign this patent, a court of equity could have compelled them to do so, and their assign *126 ment in writing under such decree would have undoubtedly been a compliance with section 4898 (Ager v. Murray, 105 U. S. 126). A voluntary act on their part would have been as effectual as an involuntary act by decree of a court of equity.
But it is truly said that they did not assign as trustees, but as the agents of the corporation, thereunto authorized by the vote of the executive committee, and that the instrument purports to be the act of the corporation.
It is furthermore said that inasmuch as the president and secretary had not, before the death of the corporation executed the power conferred upon them, and as this power was not coupled with an interest in the thing to be transferred, the power became extinct by the death of the corporation.
If the analogies are complete and perfect between the condition of the old corporation after the consolidation and the death of a natural person, the position of the defendant is probably sound-, but the defect in the argument, as it seems to me, is that the old corporation was not dead. It could do no new business and almost all its powers had ceased, but it had vitality. In the language of Judge Shepley, in In re The Independent Ins. Co., 1 Holmes, 103, the dissolution was “ a suspension of corporate action, not a cessation of corporate life.” ' The statute had declared that all suits by or against it could be prosecuted to final judgment, and that no claim or demand against it was impaired. Being then a corporation which was not extinct, the power which was legally conferred before the consolidation, for the purpose of winding lip its business, could be executed,, and the seal of the corporation could be used, after the consolidation.
It is true . that the statute' did not in terms, as is often done, continue the existence of the corporation to do the acts which are necessary and incident .to the winding up. of- its business, but it did, in terms, declare, that the cor *127 poration was not extinguished with respect to any demands upon it.
The new corporation had a right to require a written assignment of the patents. The old corporation, recognizing this right, charged its officers with the duty of making the title of the new company perfect, and the deed was executed, for the purpose of satisfying this just demand, and performing this duty. It would be a narrow adherance to technicalities to say that it was invalid.
The facts in regard to patent No. 369,280 differ from those which have been recited in regard to patent No. 274, 290 only in the following particulars.
'Thomas A. Edison, as the inventor, made application for No. 369,280 on February 5, 1880, and pending the application in the patent office, assigned his interest in the invention and the patent to “ The Edison Electric Light Company.” On August 9, 1887, before the patent was granted, and after the consolidation, the president and secretary of said old company executed an assignment of said invention in the name of the old company to the new consolidated company.
The facts in the two cases have no difference in any vital particular.
The pleas are overruled.
Note on the Devolution oe the Property and Rights oe a Dissolved Corporation.
The principles involved in the case in the text are of importance not only in their application to patents and other personal property in general, but also to real property, and particularly real property situate without the State of the incorporation.
The following cases illustrate various phases of the subject:
Bingham v. Weiderwax, 1 N. Y. 509 (A. Y. Ct. of App. 1848), was an action in equity for a perpetual injunction. Lands belonging to a corporation were conveyed to the defendant, who assumed two mortgages thereon, by three of *128 the five directors of the corporation, who covenanted that they ‘r at the time of the execution of the deed were the true and lawful owners of the premises in right of the president, directors and company of the Hillsdale and Chatham Turnpike Road, and were seized of a perfect estate therein in fee simple, and had lawful right and authority to sell and convey the same in manner aforesaid/’ Subsequently, and three years, after the dissolution of the corporation, the owner' of one of the mortgages brought suit to foreclose the same, and the premises were sold under the decree in that suit. The grantee then brought an action against the directors for the breach of their covenant of seizin, and the directors in turn brought this action to perpetually restrain the grantee from prosecuting his suit, alleging that the foreclosure was due to the grantee's neglect to pay the mortgage.—Held, that the action would not lie. The court (per Jewett, Ch. J.) say (p. 513): “ Van Buren’s. grantors agreed with him that they were seized of the land, and it was their business to see that their covenant in that respect was kept when they executed the deed. Equity may compel parties to execute their agreements, but has no power to make agreements for them, or to substitute one for another. And besides, it appears from the bill that the corporation even did not lose the land or its title by the foreclosure and sale under the mortgage. It had lost its title nearly or quité three years before, in 1840, by its dissolution. At that time, and for that cause, the tide reverted back to its original grantor or his heirs, there being no provision in its charter or in any other statute to avert that consequence upon its dissolution (Angell & Ames on Corp. 128, 129; 2 Kent’s Com. 305). At all events the bill shows the dissolution of the corporation at the time-mentioned, without showing that the title to their lands was saved in such manner as that Van Burén, or his representatives could by any means have acquired it under the agreement and deed, even if he had paid the mortgages subsequently and before foreclosure ; and it is not set up that he had agreed to pay, or that the holders of the mortgages were bound to receive, or would have received payment of the mortgages, or either of them, prior to the time of the dissolution of the corporation, or prior to the time of the death of Van Burén ; or *129 that he at any time knew or had notice that he could compel1 the corporation, or any other person, to convey to him the title to said land; or even that he knew or was informed that, his grantors were not seized when they executed the deed. Therefore it seems to me that there is no ground upon which to sustain this bill, founded upon the neglect of Van Burén to pay the mortgages, or either of them.”
In Heyward v. Mayor, etc. of N. Y., 7 N. Y. 314 (N. Y. Ct. of App., 1852), it appeared that the city of New York had acquired certain lands under an act of the Legislature authorizing proceedings for that purpose, “for the purpose of extending the almshouse establishment of the said city.” After the> lapse of about twenty-seven years, circumstances had ariseni justifying a removal of the almshouse establishment to another.place, and it followed that the identical lands in question were? no longer required at that place for the purpose for which they had been taken. The plaintiff alleged that the moneys received by him in the condemnation proceedings were only the value of the use of the land during the time it should actually be used for the purposes for which it was taken, and that upon such use ceasing the title reverted back to the plaintiff.— Held, that the Legislature had power to authorize a municipal corporation to acquire a fee simple to lands of private persons required for public purposes upon the payment of a just compensation, and when so acquired, no reversionary estate remains, and if the public exigencies require their conversion to some, other purpose, they may be so converted.
The court (per Welles, J.) say (p. 325) : “ Where as in this-; case a fee simple absolute was deemed necessary and was taken,, all the loss and damage of the owners and others interested, by: and in consequence of their relinquishing the same, was directed! to be and was in fact paid. This must necessarily have included the whole value of the inheritance. There would be no justice or equity in paying the owners anything more at any time or under any circumstances. That the use by the public of the lands in question might cease was a possibility, but was; not contemplated at the time. The site of the almshouse at Bellevue was supposed to be fixed and permanent, and the? *130 annexation to it of the lands in question was designed and expected to be also permanent. There could, therefore, be no just measure of-compensation but the whole value of the lands with the damages for relinquishing them; and that being paid, justice could not be done to the corporation of the city without allowing the latter to hold the lands, as the act pro-wides, in fee simple absolute.”
To the same effect is Sweet v. Buffalo, N. Y., etc. R. R. Co., 79 N. Y. 293 (N. Y. Ct. of App., 1879), which was an ¡action of ejectment. The defendant acquired the right to use «the land from the city of Buffalo, the city taking the land Hinder proceedings authorizing such taking for the purpose of maintaining a breakwater on the shore of Lake Erie and after-wards gave permission to the defendant to construct its tracks .on the land in question.
Owen v. Smith, 31 Barb. 641 (N. Y. Supm. Ct., 1860). dase submitted upon agreed facts. The defendants entered upon lands’conveyed by their ancestors to two associates named in the articles of incorporation of the Herkimer Mfg. Co., on ■condition that the purposes of incorporation be carried out within a given time, who in turn conveyed it to the corporation, “ its successors and assigns, fully, freely, absolutely and iorever.” Subsequently the charter of the company expired by its own limitation and the plaintiff was appointed receiver of its property. The defendants entered upon the lands claiming that upon the dissolution the title reverted to the original proprietor or his heirs at law.—Held, that upon the dissolution of a ■corporation the title to real property held by it does not revert to the original proprietors and grantors, or their heirs, but vests in the receiver of the corporation ; and the property, real and personal, of the corporation, is to be administered by him for ■the benefit of creditors and stockholders ; that the rule of the -common law, in relation to the effect of a dissolution upon *he property and effects of a corporation, is a harsh and inequitable rule, and it seems, has never been, to the fullest ex-.tent, adopted and acted upon as the rule in this coun try ; at least so far as the extinguishment of debts is concerned. And the rule was changed, in this State, by the act of April 9, *131 1811, for the relief of the creditors of corporations (1 R. L. 248; 1 R. S. 600, §§ 9, 10.)
Mahon v. N. Y. Central R. R. Co., 24 N. Y. 658 (N. Y. Ct. of App., I860]. Action for damages from the construction of an embankment in front of plaintiff’s houses and partly ■on his lands, whereby he was deprived of the use of the highway called the Mohawk turnpike ; and also for the construction and operation of a railroad uponhis lands. The turnpike ■company’s rights were purchased by the Utica & Schenectady R. R. Co., to whose rights and liabilities the defendant had succeeded, and the damages claimed for the construction of the railroad, were caused by the Utica & Schenectady R. R. Co. building on the turnpike, the fee in which plaintiff claimed.
The court (per Clerke, J.) say (p. 660) : “Did the Utica ■and Schenectady Railroad Company transcend the authority constitutionally vested in them by the Legislature F If the plaintiff’s testator owned the fee of the land over which the turnpike company’s road ran, at the time of the transfer of the road to the Utica and Schenectady Railroad Company, it could not be taken away from him without causing his damages to he assessed and paid ; and the illegal appropriation of it would make them liable for damages in successive actions as the ■damages accrued. It seems to be admitted that no such damages were assessed or paid.
“ The rule that owners of land bounded on public highways prima facie own the land to the centre of the highway is not alone applicable to ordinary highways, but also to turnpikes (Hooker v. The Utica and Minden Turnpike Co., 12 Wend. 371) ; and although the general act relating to turn- ' pike companies, passed March 13, 1807, declares, when the president and directors pay the owners of the lands the sums assessed and awarded by the appraisers in their inquisition, they shall have and hold to them, and their successors and assigns forever, the lands and tenements -described in their inquisition; yet it has been always held that this and the special act of incorporation vests in the company the title to the lands over which the road passes only for the purposes of the road, and when the road is abandoned the land" reverts *132 to the original owners. The company only acquired such an estate in the land taken by it as was necessary to fulfil the end and intent of the corporation, and could hold it to no other use, intent or purpose. Having ceased to occupy the land in question for the purpose of a turnpike road, the Mohawk Turnpike Company, in transferring it, in effect abandoned it; and, although they were authorized by the legislature to transfer it to the Utica and Schenectady Railroad Company, this could not, constitutionally, deprive the original owners of the lands-of their right of reversion, without compensation (Davis v. Mayor, etc. of N. Y., 14 N. Y. 506; Williams v. N. Y. Central R. R. Co., 16 Id. 97). An easement for the purpose of a. highway does not authorize, as against the proprietor of the soil,, the laying down of a railroad upon the track of the highway. The use of the land for a railroad is totally different from that, public right of passage for which highways were designed.”
Nicoll v. N. Y. & Erie R. R. Co., 12 N. Y. 121 (N. Y. Ct. of App., 1854). Action of ejectment. The plaintiff was the grantee by mesne coyvejumces of lands through which the defendant’s road was to run. The defendant acquired possession from the Hudson and Delaware R. R. Co., under an act of the Legislature authorizing the transfer, the latter having acquired the right of way by grant from the plaintiff’s original grantor on condition that the road should be built, within a. certain period of time. This condition was broken by the defendant’sfailure to build. Judgment for plaintiff was reversed by the general term.—Held, that the Hudson and Delaware R. R. Co. took a fee which became vested in its successor the defendant, and this although the corporation was chartered for only fifty years ; that the plaintiff could not take advantage of the breach of the condition subsequent—the failure to-build within -the prescribed time—as the right to enforce the breach existed only in the grantor or his heirs, and an entry upon the lands was necessary to enforce the breach.
The court (per Parker, J.) say (p. 128) : “ But it is objected that because, by the act of incorporation, there was given to it only a term of existence of fifty years (Laws of 1835, p. 110, § 1), therefore the grant shall be deemed to have conveyed an *133 estate for years, and not in fees. Th e unsoundness of that position is easily shown. It was never yet held, that a grant of a fee in express terms could be restricted by the fact that the grantee had but a limited term of existence. If it were so, a grant could never be made to an individual in fee, because in his earthly existence he is not immortal. Under such a rule, a man could never buy a greater interest in a farm than a life estate. It would follow that all estates would be life estates, except those held by perpetual corporations. The intent of parties, fully expressed in a deed, would avail nothing, but all grants would be measured by the mortality of the grantee. It is needless to follow out the proposition further to show'its absurdity. . , . It is erroneous to say that an estate in fee cannot be fully enjoyed by a natural person, or by a corporation of limited duration. It is an enjoyment of the fee to possess it, and to have the full control of it, including the power of alienation, by which'its full value may at once be realized.
<c It is well settled that corporations, though limited in their duration, may purchase and hold a fee, and they may sell such real estate whenever they shall find it no longer necessary or convenient (5 Denio, 389; 2 Preston on Estates, 50). Kent says : ‘Corporations have a fee simple for the 2iurpose of alienation, but they have only a determinable fee, for the purpose of enjoyment. On the dissolution of the cois poration, the reverter is to the original grantor or his heirs; but the grantor will be excluded by the alienation in fee, and in that way the corporation may defeat the possibility of a 're-verter ’ (2 Kent, 282; 5 Denio, 389; Bingham v. Weiderwax, 1 N. Y. 509). Large sums of money are accordingly expended by railroad companies in erecting extensive station-houses and depots, and by banking corporations in erecting banking-houses, because, holding the land in fee, they may be able to reimburse themselves for the outlay by selling the fee before the termination of their corporate existence.”
To similar effect is People v. Mauran, 5 Denio, 389.
Heath v. Barmore, 50 N. Y. 302; (N. Y. Ct. of App., 1873). Action for trespass. The lands in question were conveyed to a jfianlc road company who, after using them as *134 a plank road, abandoned them. The plaintiff fenced up the road which crossed his lands and the defendant broke down the fences, under direction of the town authorities, so-that travel could be resumed. The trial judge held that trespass would not lie, as the plank road company acquired the right to use the lands for the purpose of their road during the period embraced in their charter, and upon abandoning the road their rights in the lands passed to the town. On appeal to the court of appeals,—Held, that the rule at common law, that real estate held by a corporation at the time of its dissolution reverts to the grantor, does not prevail in this State in respect to stock companies. In lands conveyed absolutely to a corporation having stockholders, no reversion or possibility of a reverter remains to the grantor. Judgment affirmed.
People v. O’Brien, 45 Hun, 519 (N. Y. Supm. Ct., 1887). Action to wind up the Broadway Surface Railroad Company. The trial judge found that certain mortgages made by the company were valid when made, and effectual to bind the franchisb, and were not affected by the termination of the life of the company, and are still valid and effectual liens upon the right and franchise in favor of the holders of the bonds given under the mortgages ; and that certain traffic contracts between the company and other horse railway companies were within the power of these companies to make, and valid when made, and are not affected by the dissolution of this company; and that, the assets of the company in the hands of its receiver are subject to the liens of the said mortgages and the burden of the said traffic agreements.
On appeal to the general term,—Held, (1) That the effect of L. 1886, c. 258, dissolving and annulling the charter of Broadway Surface Railroad Company, was to leave the road and the franchises to operate it unimpaired, but charged with the burdens and mortgages legally placed- thereon by the corporation. [Citing People ex rel. Kimball v. Boston and Albany R. R. Co., 70 N. Y. 569.] (2) That under L. 1886, c. 310, the receiver took the place of the directors of the dissolved corporation, and held the property in their stead, and' the liens are valid as against him. (3) That the validity of *135 traffic agreements made by the company cannot be tried in an action to wind up the affairs of the dissolved corporation.
In People v. National Trust Co., 82 N. Y. 283, it was held! that the dissolution of a corporation does not terminate a lease-entered nto by it, nor do its covenants cease to be obligatory-
In Taylor v. Holmes, 127 U. 8. 489, tie supreme court of the United States held that the fact that the period •limited by the articles of -association in a mining company formed under the laws of New York had elapsed, did not terminate its existence in such sense as to prevent an action to be brought in the corporate name, or by its sole surviving director to establish its rights of property for the benefit of stockholders. The bill was filed by two stockholders to reform, a conveyance by which the corporation had originally acquired-its title to its mining lands, the allegation being that it was-intended to convey to it a perfect title in fee simple, whereas,, wanting the words of limitation to heirs or assigns, and by-reason of other defects, it did not convey such a title.
The court dismissed the bill on the ground, among others)., that sufficient evidence to justify the stockholders suing.was; not shown.
The court say (p. 492): “ Under the laws of New York, the-existence of such a corporation was continued after the period for which it was limited for the purpose of winding up its; business, and for the purpose of collecting and distributing its; assets and paying its debts. Although the allegation of the bill is that many of the directors of the company are dead, still it is shown that one of them survives, and no assertion is made that there was any application to this surviving director on the part of the defendants for the purpose of instituting any proceed- ■ ings looking to the rectification of this deed or for the recovery of the real estate in North Carolina; nor does it appear that, there was any request made to him to bring any suit either afc law or in chancery for that purpose. No effort was made to-call together the stockholders to take any action on the part-of the company, or to elect other directors, or to obtain any-united action in the assertion of the claims now set up.”